## UNITED ENGINEERING & FOUNDRY CO. v. COLD METAL PROCESS CO.
### Civ. A. No. 7744.

United States District Court
W. D. Pennsylvania.

Aug. 28, 1950.

James S. Crawford (of Patterson, Crawford, Arensberg & Dunn), Paul N. Critchlow and Jo Baily Brown (of Brown, Critchlow, Flick & Peckham), all of Pittsburgh, Pa., for cross-plaintiff.

William H. Webb (of Webb, Mackey & Burden), John J. Heard and William Wallace Booth (of Reed, Smith, Shaw & McClay), all of Pittsburgh, Pa., Clarence B. Zewadski (of Whittemore, Hulbert & Belknap), Detroit, Mich., for cross-defendant.

FOLLMER, District Judge.

In this action United Engineering & Foundry Company (hereinafter referred to

as "United") as cross-plaintiff filed its cross-complaint, supplemental and ancillary to the suit in Equity No. 2991, now pending in this Court, between the parties hereto, against the Cold Metal Process Company as cross-defendant (hereinafter referred to as "Cold Metal"). United is a Pennsylvania corporation, having its principal office and place of business at Pittsburgh, Pennsylvania, in this judicial district, and Cold Metal is an Ohio corporation, having its principal office and place of business at Youngstown, Ohio.

The cross-complaint was filed March 28, 1949, and prayed for injunctive relief and an accounting. Cross-defendant has moved to dismiss on the following grounds:

(1) Lack of jurisdiction over the person of cross-defendant, Cold Metal, because the complaint is not ancillary to Equity No. 2991 or Equity No. 2506 in this Court, hence cross-defendant is not subject to service of process in this district.

(2) Lack of jurisdiction over the subject matter of the complaint if considered as supplemental or ancillary to Equity No. 2991 or Equity No. 2506 in this Court.[1]

(3) Complaint fails to state a claim against cross-defendant upon which relief can or should be granted.

(4) Laches.

This litigation between these parties has been in progress for over twenty years and the many reported decisions [2] would seem to render it unnecessary at this time to engage in an extended recital of all of the factual background.

The immediate problem is a narrow one. Can this suit be considered as ancillary to either Equity No. 2991 or Equity No. 2506 in this Court?

As has been frequently stated in the reported decisions above referred to, all of this litigation had its inception in an agreement dated June 20, 1927, entered into between the parties hereto and at a time when both had applications pending in the United States Patent Office relating to 4-high rolling mills and the rolling of thin material. Both parties at that time were represented by the same firm of attorneys. The agreement sought to compose their apparently conflicting positions; subsequent events have revealed that at least in that regard it has been a total failure.

In Equity No. 2506, in this Court, Cold Metal sued United for infringement of patent 1,779,195, referred to as "195", alleging that United was using the invention covered by that patent without right or license. United answered by claiming, inter alia, that it had a license under the patent by virtue of the contract of June 20, 1927. This Court sustained United's defense of "license" and dismissed the bill, D.C., 3 F. Supp. 120. United appealed, seeking to have the patent declared invalid. The appeal was dismissed on the ground that United, being a licensee, could not contest validity 3 Cir., 68 F.2d 564. That, it seems to me, ended the proceedings in Equity No. 2506.

Subsequently, in Equity No. 2991, Cold Metal sued United in this Court to enjoin United from prosecuting suits as an exclusive licensee, for specific performance of the 1927 contract, and praying the Court to determine the payment required to be made by United to Cold Metal under the terms of that license contract. The case was initially heard on Cold Metal's motion for a preliminary injunction. The motion was denied, D.C., 9 F.Supp. 994, the Court finding the contract valid and enforceable, that United

1. The original complaint made no mention of Equity No. 2506; however, in its briefs and oral argument cross-plaintiff subsequently claimed the suit to be ancillary as well to Equity No. 2506.

2. Cold Metal Process Co. v. United Engineering & Foundry Co., D.C.W.D.Pa., 3 F.Supp. 120; United Engineering & Foundry Co. v. Cold Metal Process Co., 3 Cir., 68 F.2d 564; Cold Metal Process Co. v. United Engineering & Foundry Co., D.C.W.D.Pa., 9 F.Supp. 994; Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 79 F.2d 666; Cold Metal Process Co. v. United Engineering & Foundry Co., D.C.W.D.Pa., 83 F.Supp. 914; Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 107 F.2d 27; Cold Metal Process Co. v. United Engineering & Foundry Co., D.C.W.D.Pa., 43 F.Supp. 375.

had an exclusive license under the contract, and that United could sue as said licensee. Cold Metal appealed and the Court of Appeals reversed this Court's denial of the motion for preliminary injunction, 3 Cir., 79 F.2d 666. Thereafter, Cold Metal filed a supplemental complaint praying that the Court enter a decree declaring a rescission of the June 20, 1927, contract; also a prayer for alternative relief in the event of a refusal of a decree of rescission for the determination of the amount due Cold Metal under the said contract. After final hearing, this Court on January 4, 1938, filed an opinion, D.C., 83 F.Supp. 914, refusing to rescind the contract of June 20, 1927, holding that Cold Metal was entitled to a decree providing for a determination of the amount due from United under the said contract and the basis of payment to be made thereafter; that Cold Metal did not come into Court with unclean hands; and that the June 20, 1927, contract was "a valid, subsisting contract." On appeal from this decision, the Court of Appeals, 3 Cir., 107 F.2d 27, on page 31, modified its earlier decision, 3 Cir., 79 F.2d 666, as to the injunction against United restraining the prosecution of infringement suits brought by United in Ohio and Indiana and holding that "On principle and comity, and especially on the record as it now stands before us, freed as we think from fraud, we feel that the questions which are justiciable before the District Courts of Ohio and Indiana should be left to those courts without interference from the courts of this circuit."

The Court further held in 107 F.2d on page 32:

"The only benefit which United received for its forbearance to contest the interference proceeding was the exclusive license which it secured by the agreement of June 20, 1927. This United is seeking to retain and Cold Metal is seeking to take away. Each party in signing the agreement doubtless thought it was getting something from, and was giving something to, the other. The one was getting a patent; the other an exclusive license under it. Cold Metal is unwilling to surrender the Steckel patent and United cannot be asked to give up its exclusive license. Cold Metal with a patent and United with an agreement giving it an exclusive license are in the position in which they placed themselves and we should leave them there. The agreement of 1927 is, as Judge McVicar found, 'a valid and subsisting contract' for a license. This 'contract' has been partly performed and equity requires that it be completed by supplying the amount which United must pay for the license in accordance with the intention of the parties. * * * The evidence shows what that intention was, for the parties had an 'understanding' as to what the royalties would be and what that understanding was can readily be ascertained from the evidence by the master appointed or to be appointed by the District Court.

"The learned District Judge did not err when he held the agreement to be a 'valid, subsisting contract', and so regarding, the decree as modified is affirmed."

In addition, the Court of Appeals, 3 Cir., 107 F.2d 27, 30, in referring to a suit instituted by Cold Metal in New Jersey and which United charged was fraudulent, made this observation, "This suit involved other Steckel patents than patent No. 1,779,195, commonly called the '195' patent. *This appears to be the only Steckel patent in which United was interested.*" (Emphasis supplied.)

Pursuant to mandate, this Court accordingly appointed a Master to determine the amount due from United to Cold Metal and proceedings before him are now in progress to that end and apparently for that limited purpose Equity No. 2991 in this Court is still open.

In Oils, Inc., v. Blankenship, 10 Cir., 145 F.2d 354, on page 356, the court held that the action was not ancillary to the receivership proceedings there involved and that the suit could not be maintained in the absence of diversity of citizenship, stating: "When the main proceeding, upon which ancillary jurisdiction depends, has terminated, or the court has lost custody and control of properties and assets in the main proceeding, a suit with respect to such properties and assets is no longer ancillary to the main pro-

ceeding, and may not further rest upon the jurisdiction in the main proceeding."

The court further stated, 145 F.2d on page 356: "But a controversy cannot be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit."

■ The decree in Equity No. 2506 did nothing but dismiss an infringement suit against United. I have, as above indicated, concluded that Equity No. 2506 is definitely closed, and under the circumstances of this case, I am of the opinion that upon no line of reasoning can the instant action be considered as ancillary to that proceeding.

■ Although Equity No. 2991 is still pending, I am likewise convinced that this action is not ancillary to it. For a bill to be considered ancillary, it must be "subservient to, auxiliary to, or in aid of, that which is principal and primary." Rutherford v. Pennsylvania Greyhound Lines, Inc., D.C.S.D.Ohio, 1945, 7 F.R.D. 245, 249; Saunders v. Baltimore & O. R. Co., D.C. S.D.W.Va., 1945, 63 F.Supp. 705, 706–707; Cooperative Transit Co. v. West Penn Electric Co., 4 Cir., 1943, 132 F.2d 720. An analysis of United's allegations and prayers in the instant case considered in the light of the record in Equity No. 2991 clearly indicates to my mind that the present complaint is not ancillary thereto.

The complaint alleges that Cold Metal has "ignored, defied, misconstrued, misrepresented and treated with utter contempt" the adjudication of this Court in Equity No. 2991 in the following respects:

(1) It has asserted and represented that United has no presently existing license but merely an executory contract under which United is entitled to get a limited license under patent '195.

(2) It is currently suing millusers who purchased mills from United alleged to be within the scope of United's rights under the 1927 agreement and, at the same time, is attempting to force United to account for the same mills.

(3) It has indemnified and has offered to indemnify those purchasing from unlicensed third parties mills within the scope of United's rights against any claim that may be made against them by United within United's "exclusive license field," provided that such purchasers make payments to Cold Metal for the use of such mills.

(4) Cold Metal has collected large sums of money by suits or threats of suit for infringement of patents '195 and '016 from users of mills sold by United and used within the scope of United's alleged rights.

In June 1941, after the mandate had come down to this Court in Equity No. 2991, 3 Cir., 107 F.2d 27, United filed a motion for leave to file a "Second Supplemental Answer and Counterclaim." It here alleged that it should not pay under the 1927 agreement because the validity of patent '195 had not been established in litigation. It also charged that the Cold Metal and Carnegie-Illinois Steel agreement, settling that infringement litigation, disregarded United's "exclusive license rights in the manufacture, use and sale of four-high rolling mills described in United States Patent No. 1,779,195," and thus Cold Metal by agreeing to hold Carnegie-Illinois harmless in respect of any claim that United might make against it, violated "defendant's established rights under the June 20, 1927, contract"; that Cold Metal was soliciting and urging other users of 4-high mills to enter into like license agreements, thus further ignoring "defendant's [United's] exclusive rights." United asked that no further proceedings be taken with respect to any payments alleged to be due from it to Cold Metal by reason of Cold Metal's "unconscionable conduct and the damages caused" to United, or that no further proceedings be taken "until patent 1,779,195 has been held valid" and enforced by a court of competent jurisdiction. United further sought to restrain Cold Metal from granting licenses to others under patent '195 covering the manufacture, sale or use of any 4-high mill "coming within the defendant's exclusive field as defined in the agreement of June 20, 1927, between the plaintiff and the

defendant." It is to me most significant that in 'that effort United made no mention of the '016 patent, the unescapable inference being that then it apparently felt its rights under the 1927 contract were confined exclusively to the '195 patent. On February 18, 1942, D.C., 43 F.Supp. 375, 377, this Court (McVicar) denied United's motion, holding that any right of United against Cold Metal "other than the value of the license under the aforesaid contract, (the 1927 agreement) can be properly made the subject matter of another action by the defendant against the plaintiff." Seven years later, after having been refused admission by the front door, United attempts to gain entrance to the same structure and for the same purpose by the back door.

In my opinion Equity No. 2991 is open for the sole purpose of determining the "value of the license" under the 1927 contract, and any other right United feels it has, not only can but must be made the subject matter of another plenary action by United against Cold Metal.

United has for the past eight years consistently insisted it should pay nothing for its claimed license under the 1927 contract until the validity of the '195 patent had been established by a court of competent jurisdiction. If United is sincere in that position, certainly this is not the proceeding nor is this the forum for that determination. It is my conclusion that the instant proceeding is not ancillary to Equity No. 2991.

As to Cold Metal's assertion of laches, it has been repeatedly held that under the provisions of Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A., this is a matter of affirmative defense and not to be set up for summary disposition by motion to dismiss. Topping v. Fry, 7 Cir., 1945, 147 F.2d 715.

An appropriate order will be entered granting Cold Metal's motion to dismiss the "Ancillary Cross-Complaint."

### Order

It is ordered, adjudged and decreed that Cross-plaintiff's motion for a preliminary injunction be and it is hereby denied; that cross-defendant's motion to dismiss the Ancillary Cross-Complaint be and it is hereby granted, and that the Ancillary Cross-Complaint be and it is hereby dismissed.