The COLD METAL PROCESS COMPANY and The Union National Bank of Youngstown, Ohio, Trustee, Plaintiffs,

v.

UNITED ENGINEERING & FOUNDRY COMPANY, Defendant.

No. 2991 in Equity.

United States District Court
W. D. Pennsylvania.
January 19, 1955.

See also 92 F.Supp. 969.

---

1. Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129; Jordan v. American Eagle Fire Ins. Co., 83 U.S. App.D.C. 192, 169 F.2d 281.

2. Joint Appendix, pp. 114–115 (emphasis supplied).

William H. Webb, Webb, Mackey & Burden, William W. Booth, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiffs.

Jo Bailey Brown, Brown, Critchlow, Flick & Peckham, Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

Both parties have filed objections to the report of a Special Master appointed by the court to ascertain what payment is due from defendant to plaintiffs. Plaintiffs are Cold Metal Process Company and The Union National Bank of Youngstown, Ohio, Trustee, herein to be called "Cold Metal." Defendant is the United Engineering and Foundry Company, herein to be called "United." A written contract executed between these parties, dated June 30, 1927, is the basis for this twenty year legal battle. The decision of the Court of Appeals of this Circuit, 107 F.2d 27, held that the contract of June 30, 1927 is a valid and subsisting agreement between the parties and pursuant to the mandate of the Court, dated June 15, 1939, Judge McVicar appointed J. Garfield Houston,

"* * * a Master to ascertain, state and report to this Court the total amount of money due to the plaintiff from the defendant under the 1927 agreement up to the date hereof, and the basis of payment on mills coming under said contract which may hereafter be made and sold by the defendant."

The decree also required:

"5. That defendant shall pay to the plaintiff such amount as may be due to the plaintiff from the defendant under the 1927 agreement on mills made and sold by the defendant prior to the date hereof.

"6. That a determination be made of the basis and amount of payment to be made by the defendant to the plaintiff on mills made and sold by the defendant under and pursuant to the 1927 agreement subsequent to the date hereof."

The Special Master was appointed in July of 1943. He held extensive hearings. His printed report was filed May 28, 1954. He held United indebted to Cold Metal for royalties on 91 mills listed in Appendix "B" to his report in the total amount of $387,650. He further held that Cold Metal is not entitled to an allowance of interest on the aforesaid indebtedness prior to the filing of the Master's report. Cold Metal lists forty-five objections to the report of the Special Master and United lists some twenty-three objections to the report.

The history of the present case is found in the Opinion of Judge Buffington, reported 107 F.2d 27. The Master's printed report contains some one hundred sixty-eight pages, comprising one hundred and one Findings of Fact and twenty-four Conclusions of Law. The report is comprehensive in all respects. The various issues raised by the parties are fully explored and discussed in detail. Each of the parties has filed briefs in support of their objections to the report of the Special Master, and each of the parties has filed a reply brief in answer to the main brief of the opposing party. Oral argument has been held on the objections so that, under Rule 53, Rules of Civil Procedure, 28 U.S.C., it is the duty of this Court to adopt the report of the Special Master, or it may be modified, or it may be rejected in whole or in part, or further evidence may be received, or it may be recommitted to the Special Master with instructions. As this is an action

tried without a jury, I am required to accept the Special Master's findings of fact unless clearly erroneous.

The agreement of June 20, 1927 was held by this Court, the case being then before Judge McVicar, and by the Court of Appeals, to be a " 'valid and subsisting contract' " for an exclusive license to United from Cold Metal under Patent 1,779,195. Judge McVicar's decision was filed January 4, 1938, but was apparently not sent to the publisher until nearly ten years later, and is found in D.C., 83 F.Supp. 914. In the opinion of the Court of Appeals, 107 F.2d 27, on page 32, Judge Buffington says:

> "The agreement of 1927 is, as Judge McVicar found, 'a valid and subsisting contract' for a license. This 'contract' has been partly performed and equity requires that it be completed by supplying the amount which United must pay for the license in accordance with the intention of the parties. [Citing cases.] The evidence shows what that intention was, for the parties had an 'understanding' as to what the royalties would be and what that understanding was can readily be ascertained from the evidence by the master appointed or to be appointed by the District Court."

This case was first heard by this present Court at argument on the objections to the report of the Special Master. It seems that the decision, 107 F.2d 27, was intended by the Court of Appeals as a final one which defined the rights of the parties, leaving merely the computation of the amount due to be determined by the Special Master. However, the decision has not been accepted by the litigants as final or as a decision determining the issues between them.

The present issue is, first, the rate of the royalty required to be paid by United to Cold Metal under the 1927 agreement. Judge McVicar held in this case, 83 F. Supp. 914, that plaintiff is entitled to a decree providing for a determination of the amount due from defendant under the contract to the date of his decision,

January 4, 1938, and the basis of payment to be made thereafter. However, he said on a vital point that the exchange of letters in January, 1928, between the parties did not constitute a contract agreement as to the royalty rate. Without limiting the findings to the January, 1928 exchange of letters, the Court of Appeals said that "the evidence shows what that intention was, for the parties had an 'understanding' as to what the royalties would be and what that understanding was can readily be ascertained from the evidence * * *."

■ As the parties did not agree on an interpretation of the decision of the Court of Appeals, 107 F.2d 27, the proceedings before the Special Master were bitterly fought from beginning to end. The Special Master held that the royalty rate to be paid by United was based on the January 1928 letters. Cold Metal says that this ruling is error and contrary to this Court's rulings and to the decree on mandate and should be reversed and the case sent back to the Master to receive evidence in regard to the value of the rights obtained by United under the 1927 agreement. On the facts found by him, the Master's first nine Conclusions of Law relate to the royalty to be paid by United to Cold Metal under the 1927 contract. The case was before the Special Master for more than ten years. This particular case has been before the Court of Appeals on three occasions. It has been referred to in many other decisions of the various courts. What Judge McVicar held and what the Court of Appeals held in this case has been referred to by Chief Judge Biggs in litigation between the parties, 3 Cir., 190 F.2d 217. On what appears to this Court as being ample evidence, and upon careful consideration of the various issues, the Special Master found that the exchange of letters of January, 1928 fixed the royalty rate. Under the decisions of this Court, as written by Judge McVicar, and under the decision of the Court of Appeals, 107 F.2d 27, I am in full agreement with the Special Master on this phase of the case.

United has heretofore contended that the royalty rate is shown in the January, 1928 letters, but before the Master took the position that by reason of failure of consideration or by reason of failure of performance on the part of Cold Metal it has no obligation to pay royalties in any amount. Much of the proceedings before the Master are concerned with this defense asserted by United. This defense is strongly urged upon the Court by United as it was rejected by the Special Master. When United's defense of failure of consideration was first raised before the Master, he first held that this defense was not available to United because such a defense appeared to be inconsistent with a decree for specific performance of the 1927 contract. Cold Metal contended before the Special Master that if this defense was raised in Equity 2991 it was not sustained, and therefore the matter is res adjudicata. The Master says that the defense of failure of performance was not pressed either in the District Court or the Court of Appeals. In his discussion he says the two main issues which were argued were whether the 1927 contract should be rescinded and whether the parties had reached an understanding as to the royalty rate. The Special Master sets forth the facts on which United relies to constitute failure of consideration under the following captions:

"(a) The failure of Cold Metal to grant a license when it obtained patent 195.

(b) Cold Metal's filing of Equity 2506 charging United as an infringer under patent 195.

(c) Cold Metal's enjoining of United from bringing suits against infringers of patent 195.

(d) Cold Metal's supplemental bill in Equity 2991 praying for the rescission of the 1927 contract.

(e) Statements of counsel for Cold Metal and its officers that United did not have a license under the 1927 contract.

(f) Filing of suits for infringement against purchasers of mills from United.

(g) Cold Metal's licensing of users of mills under patent 195.

The Special Master carefully reviewed the evidence to ascertain whether Cold Metal failed to perform its obligations under the 1927 contract, and whether any failure, if there was a failure, was justified by the conduct of United; and also if there was a failure to perform on the part of Cold Metal, whether it was of so material a nature as to wholly defeat Cold Metal's claim for royalties. Again, it is the opinion of this Court that the Special Master carefully and minutely dealt with this subject. He gave this defense his full consideration. His Findings of Fact on this phase of the case cannot be said to be clearly erroneous. This Court has serious doubt that the defense of failure of consideration was available to United under the decisions of this Court and of the Court of Appeals. In this case, Judge McVicar has referred to the original pleadings. It appears that one of the issues in this case, No. 2991, has always been a determination of the amount due plaintiff under the 1927 agreement. The failure to perform on the part of United or failure of consideration under the contract are defenses against a claim for royalties asserted by Cold Metal in this case. It seems to this Court, as Cold Metal contends, that the judgment of specific performance in this case stands as a bar, not only as to every matter which was offered and received to defeat Cold Metal's claim for specific performance, but as to any other admissible matter which might have been offered for that purpose. See Cromwell v. County of Sac., 94 U.S. 351, 24 L.Ed. 195. However, the Special Master has made Findings of Fact and Conclusions of Law with respect to the defense now under consideration and has concluded that this defense is not to defeat the royalty payments. Therefore, as this defense of United on its merits has been rejected by

the Special Master, this Court is not now required to rule as to whether the defense was available to United in the first instance.

 United contends, and Cold Metal denies, that payment of royalties was to be postponed until Patent 195 had been held valid. The Master found (Findings 96 and 97) that subsequent to the execution of the contract of 1927, the parties agreed that the royalty payments were to be postponed until Patent 195 had been litigated and held valid, and further, the Master found that Patent 195 was litigated and held valid in Equity 2506 in this Court, 3 F.Supp. 120, decided January 9, 1933. Again, the Master's findings with respect to this issue do not appear to be clearly erroneous and must therefore be accepted.

 One of the issues before the Special Master was whether United was liable for royalties on mills sold by it to purchasers outside the United States. On this subject the Master's Findings are Nos. 98 and 99 and the Conclusion is No. 16, in which he held United not liable for royalties on thirty-two mills which were sold and delivered to customers beyond the territorial limits of the United States. This issue involves the construction of the 1927 contract. The Special Master refers to the scope of the license to be granted under the agreement and to the extent of the rights granted by a patent as provided in Revised Statute Section 4884, formerly 35 U.S.C.A. § 40,[1] which was then in effect. The Special Master reviews the contract and the literal wording thereof, but concludes, however, that having regard to the rules of Patent Law the express language cannot be taken literally. The Patent statute gives no protection to a patentee outside of the United States and its territories. It is obvious that anyone could with impunity make, use and sell the invention covered by Patent 195 outside the United States. In this connection, the Master refers to Hewitt v. American Telephone and Telegraph Co., D.C.,

272 F. 194, which holds that when a licensee is sued for royalties and the question is whether the product of the licensee comes under the claims of the patent involved, the test of liability is whether the licensee would be an infringer under the rules of patent law if he held no license. The Master holds that the liability of United with respect to the mills sold to foreign purchasers should be determined in accordance with the rules of Patent Law, which would be applied in determining whether a non-licensee was an infringer if he acted in all respects as United did. The Special Master classifies the foreign mills into two groups. The one group comprising seventeen mills for which the bearings for the backing rolls were made for United in Sweden and shipped direct from Sweden to the foreign purchasers with all other parts of the mills having been made by or for United in the United States, except as to mills numbers 104 and 123, in which the bearings for the work rolls were made in Sweden and were shipped direct to Japan. One mill, number 116, sold to a British purchaser, Cold Metal concedes that United is not liable for, as all the bearings were supplied by the purchaser.

An examination of the record, Report of the Master and of the briefs of counsel indicate that the Master has given careful consideration to the issues raised with respect to the foreign mills. His Findings of Fact do not appear to be clearly erroneous and therefore must be accepted. His Conclusion of Law No. 16 is correct.

To briefly summarize what has been discussed, a reference to the Opinion in 107 F.2d 27 is again helpful, where it is said:

"This 'contract' has been partly performed and equity requires that it be completed by supplying the amount which United must pay for the license in accordance with the intention of the parties."

Also, the Court of Appeals, in its decision of June 8, 1951, 190 F.2d 217, at

1. Now 35 U.S.C.A. § 154.

page 219, said, with reference to the royalty here discussed:

> "In substance it had been determined that United had an exclusive license from Cold Metal to make, use, and sell the four-high mills covered by the 1927 agreement and that United should pay royalties to Cold Metal in an amount to be determined by the court below."

■ The parties to this litigation do not reach the same result in an interpretation of the decisions of Judge McVicar and of the Court of Appeals. For instance, Cold Metal repeatedly refers to the phrase "value of the license" used by Judge McVicar in contending that the Special Master was required to receive evidence to determine the basis upon which payments should be made by United. Cold Metal asserts that the Special Master completely misconceived the source of his authority and failed to follow this Court's decree from which his authority emanated. Cold Metal says that the Court of Appeals clearly did not reverse this Court's findings that the parties did not consider that the letters relied upon by defendant constituted an agreement as to the royalty rate, and therefore it was improper for the Special Master to adopt a construction of the Court of Appeals' Opinion directly in conflict with this Court's holding. Cold Metal still contends that United was to pay it the true value of the rights granted under the 1927 agreement. It says that Judge McVicar, in his decision of February 18, 1942, 43 F.Supp. 375, 377, held that the plaintiff was entitled to an accounting for the "value of the license", and that therefore the Special Master was in error in adopting the January, 1928 letters as the basis for the amount to be paid under the agreement. In that Opinion, which is part of the law of this case, Judge McVicar also said, at page 376:

> "The decree of this Court in this case, as affirmed by the Circuit Court of Appeals, is final and cannot now be modified or changed."

Certainly, to the extent that Judge McVicar held that evidence must be received to fix the "value of the license," he was overruled by the Court of Appeals in 107 F.2d 27, which, as I read the decision, holds that the parties had reached an agreement as to the rate of royalty to be paid, and that what the understanding was that the parties had reached, was to be ascertained from the evidence already in the case. Under the decisions in this case of this Court and of the Court of Appeals, the Special Master then clearly interpreted the decisions and correctly applied the law to the facts. In writing this decision there has been no attempt to discuss in detail each and every contention of the parties. The Findings and Conclusions of the Special Master on the main issues, that is the rate of royalty and defense of failure of consideration, are in accord with the views of this Court.

United also contends that receipt of payments by Cold Metal from purchasers of United mills discharged United of liability for royalty on such mills. On this issue the Findings of Fact are Nos. 83 to 94, inclusive, and the Conclusion is No. 17. In this connection it is to be recalled that the 1927 agreement did not give United rights coextensive with the scope of Patent 1,779,195. Patent 1,744,016 has not been involved in this litigation and is not a subject of the 1927 agreement. The Special Master found that Cold Metal, by various license agreements, granted rights under various patents owned by Cold Metal, including Patents 195 and 016. Furthermore, under the Cold Metal license agreements, royalties were collected for the use of mills purchased from mill builders other than United. The findings of the Special Master are not clearly erroneous and are, therefore, adopted, and it is believed that his Conclusion of Law No. 17 is correct.

■ Cold Metal claims royalties on mills sold prior to October 21, 1930. The Special Master concluded that United's license rights under the 1927 agreement commenced October 21, 1930,

the date when Patent 195 was issued, and ended seventeen years thereafter on October 21, 1947, when the patent expired— Conclusion No. 19. The Special Master was of the opinion that neither the 1927 contract, nor the exchange of letters in January, 1928, gave any indication that royalties were to be paid on mills sold prior to the issuance of Patent 195. The Court is in agreement with the Special Master on this issue. Cold Metal contends, however, that United, under the theory of "licensed use," has admitted liability in the course of litigation between the parties. In this Court's view, the issues here relate to the terms of a contract between the parties to the litigation. Various assertions have been made by each of the parties that the other made admissions on many phases of the litigation. An examination of the various references to purported admissions indicates that many of them were made during the course of argument or in writing briefs in an attempt to clarify a factual situation or interpret the law as counsel then understood it. It is not the view of this Court that the rulings of the Special Master have been based on admissions of fact or of liability by either party. Therefore, this Court finds that United has made no legal admission of liability to pay royalties on mills sold prior to the issuance of Patent 195.

One troublesome issue remains. As on all of the issues, the parties have divergent views on whether United is to be charged interest, and if so, when it should commence. The Special Master, upon a full discussion of the question, directs that interest be computed as of the date of filing his report. This date is May 28, 1954. The Special Master held that United's claim is for an unliquidated indebtedness, which requires the exercise of judicial function to determine the amount. Hence the allowance of interest is discretionary. United States v. Bethlehem Steel Corp., 3 Cir., 113 F.2d 301, citing Pennsylvania cases.

In Cold Metal's original bill of complaint, filed more than twenty years ago, the basis on which it brought this suit is plainly set forth in paragraph (g), as follows:

"(g) That this Court finally settle and determine the scope of the said 1927 agreement, and determine or have determined by reference to arbitrators or a master or otherwise the amount due plaintiff to date thereunder, and determine the basis for payments to be made by defendant to plaintiff in the future under said 1927 agreement."

In the light of the foregoing, it therefore seems that Cold Metal's action is clearly one for unliquidated damages for a breach of contract and not a suit on a contract for a sum certain due thereunder. Section 337(b) of the Restatement of Contracts. This Court is not unmindful of the recent decision of the Court of Appeals in Wilson v. Homestead Valve Mfg. Co., 3 Cir., 217 F.2d 792, where interest was directed. In the exercise of its discretion, this Court approves the action of the Special Master in holding that Cold Metal is not entitled to an allowance of interest prior to the filing of the Master's report. Interest will be allowed Cold Metal on the sum of $387,650 at the legal rate of 6% from May 28, 1954, which was the date the report of the Special Master was filed with the Clerk of this Court.

One final matter. Pursuant to agreement, each party paid one-half of the Special Master's compensation in advance, with the understanding that the Court was to determine how it was to be charged. The total payments amount to $28,000. In addition, the Master was reimbursed for the cost of printing his report in the amount of $738.92. The report was printed at the request of both parties. Under the special circumstances of this case, it seems fair and equitable to this Court that the compensation of the Special Master be borne equally by the parties hereto. By the same reasoning it is equitable that the costs of printing the Special Master's report be divided equally by the parties, as a Mas-

ter's report is not usually required to be printed.

The report of J. Garfield Houston, Special Master, is by this Court adopted in all respects.