## COLD METAL PROCESS CO. ET AL. v. UNITED ENGINEERING & FOUNDRY CO.

No. 76.   Argued February 28, 1956.—Decided June 11, 1956.

*William H. Webb* argued the cause for petitioners. With him on the brief were *Clarence B. Zewadski* and *William Wallace Booth.*

*Jo. Baily Brown* argued the cause for respondent. With him on the brief was *Julian Miller.*

446

MR. JUSTICE BURTON delivered the opinion of the Court.

This is a multiple claims action in which the District Court entered a judgment disposing of but one claim. Pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure, as amended in 1946,[1] that court expressly determined that there was no just reason for delay and expressly directed the entry of judgment. Thereupon, an appeal was taken to the Court of Appeals, and the issue before us is whether the latter court has jurisdiction to entertain that appeal under 28 U. S. C. § 1291,[2] although an unadjudicated counterclaim awaits disposition in the District Court. The issue is comparable to that decided in *Sears, Roebuck & Co.* v. *Mackey, ante,* at 427, except that here the unadjudicated claim is a counterclaim arising in part out of the same transactions and occurrences as the adjudicated claim. By applying the reasoning used in the *Sears* case, we reach a like conclusion here and uphold the jurisdiction of the Court of Appeals.

While the counterclaim arises in part out of the same transactions as does the adjudicated claim, it was filed long after the principal proceeding was begun, and is in the nature of an action ancillary to the principal proceeding and bears a separate case number. Upon request of both parties, the District Court has removed the counterclaim from the trial calendar, without prejudice to either party, leaving it subject to reinstatement for trial at any time by order of the court upon its own initiative, or upon request of either party after reasonable notice. A brief review of the entire proceedings and a disclosure of its subject matter throws light on the relationship between the adjudicated claim and the counterclaim.

[1] For text, see *Sears, Roebuck & Co.* v. *Mackey, ante,* at 434–435.

[2] For text, see *Sears, Roebuck & Co.* v. *Mackey, ante,* at 431.

In 1927, petitioner, The Cold Metal Process Company, an Ohio corporation, and United Engineering & Foundry Company, a Pennsylvania corporation, entered into a contract for the purpose of securing a patent in the name of Cold Metal relating to a certain type of steel rolling mill and of granting to United an exclusive license to make, use and sell mills under such patent. To that end, the parties contributed claims under their respective patent applications and it was agreed that the license should be granted when the patent was issued. The parties also agreed to try, by negotiation, to determine the amount of the payment by United for the license. If the parties could not agree on that point, the subject was to be submitted to arbitration in a manner specified in the contract.[3]

In 1930, the patent was issued but Cold Metal refused to treat the 1927 contract as conferring an exclusive license on United. Cold Metal maintained that United was not a licensee until the amount due Cold Metal had been determined and paid. United, on the other hand, treated the contract as an enforceable exclusive license under which the license fee was to be determined later.

After litigation not now material,[4] Cold Metal, in 1934, instituted the present proceeding, Equity No. 2991, against United in the United States District Court for the Western District of Pennsylvania. Cold Metal asked (1) for an injunction restraining United from prosecuting certain suits, pending in Ohio and elsewhere, founded upon United's claim of exclusive rights under the patent, and (2) for determination of the amount to be paid by United under the 1927 contract. The court declined to issue a preliminary injunction, 9 F. Supp. 994, but Cold Metal appealed from such denial and, in 1935, obtained

---

[3] The entire agreement appears in 107 F. 2d 27, 28–29, n. 1.

[4] See 3 F. Supp. 120, 68 F. 2d 564, cert. denied, 291 U. S. 675, all relating to Equity No. 2506.

a reversal directing the injunction to be issued, 79 F. 2d 666.

In 1936, Cold Metal, in line with the foregoing results, filed a supplemental complaint asking that the 1927 contract be "cancelled, revoked and annulled" and that United be enjoined from further operations under the patent. However, in 1938, the District Court, after trial, held the contract valid and enforceable, and directed an accounting before a master. 83 F. Supp. 914.

Cold Metal appealed but, in 1939, the Court of Appeals reversed its 1935 decision and largely sustained United's position. It ordered that the injunction against United's infringement suits be dissolved and held that the 1927 contract created a valid and enforceable exclusive license in favor of United. It also stated that the master could determine, from an "understanding" between the parties as shown by the record, the amount due from United under the 1927 contract. 107 F. 2d 27.

In 1941, United asked leave to file an amended answer and counterclaim, complaining that Cold Metal's recent acts were inconsistent with the 1939 judgment of the Court of Appeals. In 1942, the District Court denied that motion on the ground that it could carry out only the existing mandate of the Court of Appeals. 43 F. Supp. 375. It suggested, however, that the injunction sought by United in its counterclaim should be the subject matter of another action, and that United could assert, before the master, Cold Metal's breaches of the 1927 contract. In 1943, the District Court modified its 1938 decree to make it conform to the Court of Appeals' order of 1939. It also appointed a master to determine not only the amount due Cold Metal from United for its past operations, but the payments to be made on licensed mills in the future.

In 1949, United refiled its claims as an "Ancillary Cross Complaint" in Civil Action No. 7744. United sought,

*inter alia,* (1) to enjoin the prosecution of infringement suits by Cold Metal against parties using mills under licenses granted by United, (2) to require Cold Metal to account for any funds it had collected for the use of such mills within the field of United's exclusive license, and (3) to set off those funds from any payment or royalty that might be due from United to Cold Metal under the 1927 contract. In 1950, the District Court dismissed the cross complaint on the ground that it was not ancillary to Equity No. 2991. 92 F. Supp. 596. However, in 1951, the Court of Appeals reversed the District Court. It held that United's cross complaint was, in reality, a counterclaim, ancillary to Equity No. 2991, and, therefore, within the jurisdiction of the District Court. 190 F. 2d 217. The Court of Appeals reviewed the previous course of the proceedings and pointed out that the claims now made by United in this counterclaim are entirely dependent upon the 1939 decision of that court, 107 F. 2d 27, which upheld the validity of United's exclusive license.

Into this situation, in 1954, came the master's report on the accounting in Equity No. 2991. It listed the licensed mills, fixed the compensation payable under the 1927 contract, and found that United's license had existed from 1930 to 1947 and that United's customers were duly licensed to use the patented mills. It also held that certain United mills were exempt from royalty, that Cold Metal had failed to respect the license or to perform all of its obligations under the 1927 contract, but that United owed Cold Metal a substantial sum under it.

In 1955, the District Court approved the master's report in all respects and entered judgment against United for $387,650, with interest at 6% from the date of filing of the report. Both parties appealed. Cold Metal at once moved to dismiss United's appeal on the ground that the District Court had not made the certification required by Rule 54 (b). With permission of the Court of Ap-

peals, the District Court then amended its judgment to add such certification.[5]

Again both parties appealed. Again Cold Metal moved to dismiss United's appeal from the amended judgment because the Court of Appeals lacked jurisdiction to entertain it. This time the motion was denied with a *per curiam* opinion in which the Court of Appeals said "We think the determination made under the circumstances of this case is the very kind of thing Rule 54 (b) was written to provide for. We see no violation of discretion on the part of the district judge in entering it." 221 F. 2d 115.

Accordingly, on October 3, 1955, in the Court of Appeals, the parties argued their respective appeals on their merits in Equity No. 2991. However, before any decision was rendered on the merits, we granted certiorari upon Cold Metal's petition questioning the jurisdiction of the Court of Appeals to entertain the appeal. 350 U. S. 819. We agree with the Court of Appeals that

---

[5] The amendment included an express determination that there was "no just reason for delay in entering an order and final judgment disposing of the issues raised by the Report of the Special Master . . . ." This was done after a hearing during which the District Court said "I think, so far as this Court is concerned, without a decision by the Court of Appeals on that report [of the special master], that we would just be wandering in an area where we couldn't see our way out if we tried any other issue until this case is decided."

After the master's report was filed, and before objections to it had been filed, counsel for each side jointly informed the court that they desired to dispose of the master's report before trying the issues in the pending (counterclaim) Civil Action No. 7744, and that the final action on the master's report might even make it undesirable to try that action. The court, thereupon, continued, *sine die,* the pretrial conference it had scheduled in Civil Action No. 7744, and removed the case from the trial calendar, without prejudice to either party and subject to reinstatement. That is the present status of the "counterclaim."

this is the very kind of case for which amended Rule 54 (b) was designed. The appealability of the adjudicated claim is upheld so that the merits of the existing judgment may be determined at this stage of the proceedings.

Prior to the promulgation of the Federal Rules of Civil Procedure in 1939, it may well have been true that the Court of Appeals would not, at this stage, have had jurisdiction over United's appeal. Under the single judicial unit theory of finality which was then recognized, the Court of Appeals would have been without jurisdiction until United's counterclaim also had been decided by the District Court. That would have been so even if the counterclaim did not arise out of the same transaction and occurrence as Cold Metal's claim.[6] However, as stated in *Sears, Roebuck & Co.* v. *Mackey, ante,* Rule 54 (b), in its original form, modified the judicial unit theory in respect to multiple claims actions. Accordingly, under that rule, it is likely that if United's counterclaim qualified as "permissive," [7] rather than as "compulsory," [8] the Court of Appeals would have had jurisdiction to enter-

---

[6] See *Ayres* v. *Carver*, 17 How. 591; *Bowker* v. *United States*, 186 U. S. 135; *General Electric Co.* v. *Marvel Rare Metals Co.*, 287 U. S. 430; *Toomey* v. *Toomey*, 80 U. S. App. D. C. 77, 149 F. 2d 19.

[7] Fed. Rules Civ. Proc., 13 (b), defines a "permissive" counterclaim as follows: "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

[8] Fed. Rules Civ. Proc., 13 (a), defines a compulsory counterclaim as follows:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

452

tain the appeal now before us.[9]  This conclusion follows from the fact that the test of appealability under the original rule was whether the adjudicated claims were separate from, and independent of, the unadjudicated claims. See *Reeves* v. *Beardall,* 316 U. S. 283.

However, as set forth in *Sears, Roebuck & Co.* v. *Mackey, ante,* that test led to uncertainty, of which the present case might have been an example.[10]  The amended rule overcomes that difficulty and, under its terms, we need not decide whether United's counterclaim is compulsory or permissive.  The amended rule, in contrast to the rule in its original form, treats counterclaims, whether compulsory or permissive, like other multiple claims.  It provides that "When more than one claim for relief is presented *in an action, whether as a claim, counterclaim, cross-claim, or third-party claim,* the [district] court may direct the entry of a final judgment upon one or more but less than all of the claims . . . ."  (Emphasis supplied.)  Counterclaims and cross-claims are thus equated with the others.  See *Bendix Aviation Corp.* v. *Glass,* 195 F. 2d 267 (C. A. 3d Cir.).  Therefore, under the amended rule, the relationship of the adjudicated claims to the unadjudicated claims is one of the factors which the District Court can consider in the exercise of its discretion.  If the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable.

The reasoning and the result in *Sears, Roebuck & Co.* v. *Mackey, ante,* is dispositive of this case.  The order appealed from finally adjudicates Cold Metal's claim for relief, and the Court of Appeals has held that the trial

---

[9] See *Audi Vision, Inc.* v. *RCA Mfg. Co.,* 136 F. 2d 621 (C. A. 2d Cir.) ; *Toomey* v. *Toomey, supra.*

[10] See *Sears, Roebuck & Co.* v. *Mackey, ante,* at 433–434.

court did not abuse its discretion in certifying the absence of just reasons for delay. That this order is appealable at a time when it would not have been appealable prior to the Federal Rules of Civil Procedure, or under Rule 54 (b) in its original form, does not mean that Rule 54 (b), as amended, is invalid. It applies only to a final decision of one or more claims for relief. The amended rule meets the needs and problems of modern judicial administration by adjusting the unit for appeal to fit multiple claims actions, while retaining a right of judicial review over the discretion exercised by the District Court in determining when there is no just reason for delay. This does not impair the statutory concept of finality embraced in § 1291, and, as held in *Sears, Roebuck & Co.* v. *Mackey, ante,* is within the rulemaking power of this Court.

*Affirmed.*

[For opinion of MR. JUSTICE FRANKFURTER, joined by MR. JUSTICE HARLAN, dissenting in this case, but concurring in *Sears, Roebuck & Co.* v. *Mackey,* see *ante,* p. 439.]