Gerald J. LINDENBERG, David M. Green and Ouida S. Green, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION and Fulton Federal Savings and Loan Association, on behalf of themselves and all other federal savings and loan associations similarly situated, Defendants.

Civ. A. No. C80–983.

United States District Court, N. D. Georgia, Atlanta Division.

Feb. 2, 1981.

May 26, 1981.

256

Joseph Lefkoff, Jerry L. Sims, Lefkoff, Pike, Fox & Sims, Atlanta, Ga., for plaintiffs.

Trammell E. Vickery, James A. Gilbert, Hansell, Post, Brandon & Dorsey, Henry M. Hatcher, Jr., Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case arises out of real estate transactions involving plaintiffs as home purchasers and defendants as mortgagees of the purchased properties. Counts II, III, and IV of the plaintiffs' complaint state causes of action that arises under section 67-3002 of the Georgia Code Annotated. Were plaintiffs the proper parties to bring this action, the case would involve important questions of federal law and the viability of home purchasing in uncertain economic times. The case, however, can be easily resolved and should be so resolved.

The case is now pending before the court on the joint motion of defendants for summary judgment. The facts necessary to resolve that motion are quite simple and brief. On October 24, 1979, plaintiff Lindenberg entered into a contract to purchase certain residential property from Charleen Ernst. Defendant First Federal Savings and Loan Association held a mortgage on that property that secured a loan made by First Federal to Mr. and Mrs. Perry Childers on March 30, 1977, and assumed by Ernst on September 23, 1977. The original loan instruments executed by the Childers and First Federal contained a due-on-sale clause and permitted the practices of which plaintiffs now complain. On December 31, 1979, First Federal, Ernst, and Lindenberg, entered into a Loan Modification and Assumption Agreement whereby First Federal released Ernst from any future liability on the loan and Lindenberg agreed to assume the balance on the loan at an escalated interest rate. Lindenberg also paid a loan transfer fee of $435.00.

In a similar transaction, plaintiffs David M. Green and Ouida S. Green entered into a Loan Modification and Assumption Agreement with defendant Fulton Federal Savings and Loan Association on May 13, 1980. That agreement related to a loan originally made by Fulton Federal to Mr. and Mrs.

Horace A. Smith on March 9, 1979, which provided for a due-on-sale clause as well. Under the loan modification agreement, the interest rate on the loan, the balance of which was assumed by the Greens, was escalated to 12 percent and the Greens paid a transfer fee of $599.00.

In both transactions, the key fact is the date on which the original loan instruments, which provided for the practices of which plaintiffs complain, were executed. In the case of the transaction between Lindenberg and First Federal, the original loan documents were executed on March 30, 1977. In the case of the transaction between the Greens and Fulton Federal, the original loan documents were executed on March 9, 1979.

The Georgia statute upon which plaintiffs base their cause of action provides that lenders shall not enforce documents that allow the exercise of due-on-sale clauses, the escalation of interest rates on loan assumption, and the charging of loan transfer fees in certain circumstances if the relevant documents were executed on or after July 1, 1979. By negative implication, since the documents sought to be enforced in this case were executed before July 1, 1979, defendants here did not breach the state statute in the transactions with Lindenberg and the Greens.

Based on the statute's severability clause that provides that the entire statute should not be considered unconstitutional if a part of the statute is held to be unconstitutional, plaintiffs have argued that the court should construe the July 1 enforceability cutoff to be operative only if immediate effectiveness of the statute's prohibitions were found to be constitutionally offensive. The statute, as enacted by the Georgia General Assembly, does not support plaintiffs' argument. Rather, the statute plainly says that "any lender with a security interest in real estate shall not ... [e]nforce or attempt to enforce the provisions of any mortgage, deed of trust or other real estate security instrument executed on or after July 1, 1979, which provisions are contrary to this Chap-

ter." Ga.Code Ann. § 67–3002(a). The statute does not say that a lender shall not enforce such provisions as of March 1, 1979, the effective date of the act, unless doing so is found to be unconstitutional, in which case such provisions shall not be enforced in instruments executed on or after July 1, 1979. The severability clause that plaintiffs cite in support of their argument is merely boilerplate and is intended only to insure that the entire statute will not be unenforceable if some part of it is unenforceable. Furthermore, the fact that the effective date precedes the last day on which instruments with the prohibited provisions can be executed and later enforced, evidences that the Georgia General Assembly intended to give the financial community in the state notice of an abrupt change in the law.

Since plaintiffs' argument on section 67–3002(a)(4) of the Georgia Code is faulty, the court finds that the instruments at issue in this case are not within the prohibitions of the Georgia statute and may be enforced by defendants. Consequently, the court need not reach defendants' argument that the

Georgia statute is preempted by federal law under the Supremacy Clause of the Constitution.

In conclusion, Defendants' Joint Motion for Partial Summary Judgment is hereby GRANTED.

## On Motions For Reconsideration and For Entry of Final Judgment

ROBERT H. HALL, District Judge.

Plaintiffs' now seek reconsideration of the court's Order of February 2, 1981, in which the court granted a motion for partial summary judgment in favor of defendants. Defendants have also filed a motion for entry of final judgment pursuant to Rule 54(b) so as to allow immediate consideration of this case by the Court of Appeals. Both motions must now be denied.

## I. *Plaintiffs' Motion For Reconsideration*

Plaintiffs belatedly seek to rebut defendants' argument that the Georgia Assumption Statute, Ga.Code Ann. § 67–3002,[1] did not apply to the loan instruments in this

---

1. Prior to the 1981 amendments to the Georgia Assumption Statute, which are not material to this case, the assumption statute read, in pertinent part:

    67–3002 Unreasonable restraint on the alienation of property; prohibited practices

    (a) Subject to the limitations and exceptions as provided in this Chapter, any lender with a security interest in real estate shall not, directly or indirectly:

    (1) Accelerate or mature the indebtedness secured by such real estate on account of the sale or transfer of such real estate or on account of the assumption of such indebtedness. . . .

    (2) Increase the interest rate above the existing interest rate of the indebtedness unless: (A) the borrower who is primarily liable for repayment of the indebtedness shall request in writing to the lender at the time of the making of the application to the lender for approval of the transfer or at any time prior to the granting or denying of approval of said transfer by lender that borrower desires to be relieved of liability under the terms of the security instrument and the note secured thereby, and (B) the lender furnishes written evidence to said borrower that said borrower has been relieved of liability under the terms of the security instrument and the note secured thereby. . . .

    (3) Charge, collect, or attempt to collect any fee on account of the sale or transfer of such real estate or on account of the assumption of such indebtedness in excess of [a specified percentage of the principal amount owed].

    (4) Enforce or attempt to enforce the provisions of any mortgage, deed of trust or other real estate security instrument executed on or after July 1, 1979, which provisions are contrary to this Chapter.

    (5) Withhold approval or disapproval of the sale or transfer of such real estate and the assumption of the indebtedness beyond 45 days after receipt of the written application for same, otherwise the sale or transfer and the assumption shall be approved.

    (6) Disapprove the sale or transfer of such real estate and the assumption of the indebtedness for any reason other than the credit worthiness of the person to whom the real estate would be sold or transferred, based upon standards normally used by persons in the business of making loans on real estate in the same or similar circumstances, otherwise any due-on-sale clause or similar provision in the security instrument shall be deemed to be against public policy and void. This paragraph shall not apply in those instances in which the borrower has not requested to be relieved from liability for the indebtedness.

case. Their attempt, however, remains unpersuasive, and the court adheres to its interpretation of the assumption statute set forth in the Order of February 2.

The crux of the confusion regarding this statute is that although the statute became effective upon signing by the Governor in March, 1979, it prohibits a lender from enforcing provisions of real estate security instruments that conflict with the act only if the instruments were executed on or after July 1, 1979. The act appears to have been in effect for four months before the provisions it prohibits could no longer be inserted in security instruments and later enforced.

■ Plaintiffs interpret this oddity as being designed to give lenders until July 1 to change their security deed forms in order to comply with the assumption statute. Under their interpretation, the provision simply avoided rendering clauses of security instruments signed prior to July 1 "unenforceable per se" because they contained clauses offensive under the act. Aside from the facts that no authority supports plaintiffs' interpretation and that there is no reason to suspect that a loan instrument containing a prohibited provision would be "unenforceable per se" after July 1, Ga. Code Ann. § 20–501, plaintiffs' interpretation strikes the court as strained and manufactured. It is certainly not an unavoidable interpretation. The court believes that its interpretation, that the effective date precedes the last day on which instruments with the prohibited provisions can be executed and later enforced because the Georgia General Assembly intended to give the financial community in the state notice of an abrupt change in the law, as expressed in its Order of February 2, makes more sense.

Plaintiffs have placed their primary reliance on the scant legislative history in this case. That history indicates that certain language was deleted from a draft of the assumption statute before its enactment.[2] The deleted language, found in section 1(a)(4) of the draft, stated that "this Act shall not be applicable to instruments executed prior to July 1, 1979, nor to the rights, duties or interests flowing therefrom." The quoted language, which was deleted, appeared immediately following a clause, which remains in subparagraph (a)(4) of the statute, that stated that a lender with a security interest in real estate shall not "[e]nforce or attempt to enforce the provisions of any mortgage, deed of trust, or other real estate security instrument executed on or after July 1, 1979, which provisions are contrary to this Act." Since the deleted language and the remaining language quoted above appeared in the same subsection of the draft separated only by a semicolon, the court interprets the deletion as the elimination of an obvious redundancy.

Plaintiffs assert that the deleted language was eliminated and specifically replaced with a provision making the assumption statute effective upon signing by the Governor. This construction would be plausible if the deleted language had appeared in a separate section from section 1(a)(4). In context, however, the deletion of the language from section 1(a)(4) and the addition of the provision stating the act's effective date, must be read as being unrelated.

First, the deletion and the addition of the effective date provision did not occur simultaneously. The deletion seems to have been made by the House Committee on Banks and Banking since that committee's substitute to Senate Bill 1, which as amended

---

2. Senate Bill 1, prior to various amendments, provided, in pertinent part, that:

    (a) Subject to the limitations and exceptions as provided in this Act, any person with a security interest in real estate shall not, directly or indirectly:

    . . . .

    (4) Enforce or attempt to enforce the provisions of any mortgage, deed of trust, or other real estate security instrument executed on or after July 1, 1979, which provisions are contrary to this Act; but this Act shall not be applicable to instruments executed prior to July 1, 1979, nor to the rights, duties or interests flowing therefrom.

1 *Journal of the Senate of the State of Georgia* (Regular Session) 467, 470 (1979).

eventually became the assumption statute, was the first version of the bill to appear without the redundant language. 1 *Journal of the House of Representatives of the State of Georgia* (Regular Session) 1138, 1139 (1979). The House committee substitute thus appeared with the deletion but without the effective date provision on February 20, 1979. The effective date provision did not appear until the proposed compromise of the House and Senate Conference Committee reached the Senate floor on February 28, 1979. 1 *Journal of the Senate of the State of Georgia* (Regular Session) 1352, 1356 (1979). Since the deletion and the addition of the effective date provision did not occur simultaneously, there is no evidence that the Georgia General Assembly ever viewed the effective date provision as a substitute for, or at all associated with, the language deleted from section 1(a)(4) of Senate Bill 1 by the House Committee on Banks and Banking.

Second, at one point the Senate in fact rejected an attempt to delete both references made to July 1, 1979, as the date after which offending provisions could no longer be inserted in security instruments and later be enforceable. 1 *Journal of the Senate of the State of Georgia* (Regular Session) 465, 470 (1979). Since the Senate explicitly rejected this attempt, which would have made offending provisions unenforceable immediately upon the act becoming effective, the court infers that the General Assembly intended there to be an interval during which the act was effective but during which prohibited provisions that would be enforceable could still be inserted in real estate security instruments.

■ This conclusion is strengthened by the fact that the deleted provision stated that the statute would not be *applicable* to certain instruments, while the added effective date provision states that the act will not be *effective* until a certain date. If the deleted provision and the added provision were related, the General Assembly presumably would have used the same words to express the same idea. *Applicable*, however, is not precisely synonymous with *ef-*

*fective.* Each and every word of a statute considered and passed by the General Assembly should be given meaning by the court insofar as it is possible to do so. *McDonald v. Thompson*, 305 U.S. 263, 266, 59 S.Ct. 176, 178, 83 L.Ed. 164 (1938). Thus, the court concludes that the added provision stating that the statute would be *effective* upon signing by the Governor, and the deleted provision stating that the act would not be *applicable* to instruments executed before July 1, 1979, were not intended to be alternatives.

■ The court adheres to the date of July 1 as the date after which prohibited terms may no longer be enforced rather than the date on which the statute became effective because under Georgia law a specific operative date in a statute is to be preferred to a general provision making a statute effective upon approval by the Governor. *Ross v. Jones*, 151 Ga. 425, 107 S.E.2d 160 (1921). In *Ross*, which is directly on point with the present case, the state supreme court held that "it was the intention of the legislature that the *specific* date . . . was the time when the act should take effect," *id.* at 428, 107 S.E. at 162 (emphasis original), rather than the section general as to time. *Upon*, as used in the effective date section of the statute as enacted (that the statute shall be "effective *upon* its approval by the Governor or upon its becoming law without his approval") (emphasis added), is to be construed as meaning *after* rather than *immediately after* or even *within a reasonable time after.* *Id.* Since July 1, 1979, was *after* March 1, 1979, the date the Governor signed the Act, the effective date section is not actually in conflict with subparagraph (a)(4).

The court notes that the statutory language permitting the enforcement of prohibited provisions in documents executed before July 1, 1979, subparagraph (a)(4), appears in the middle of a series of prohibited provisions and practices. On its face, this fact would seem to support plaintiffs' reading of the statute since the effective date section appears at the end of the statute. A closer examination, however, indi-

cates that the placement of subparagraph (a)(4) is logical. The preceding three subparagraphs explain provisions prohibited by the statute that would appear as clauses in the security instrument. The two subparagraphs that follow subparagraph (a)(4) prohibit practices that are subjective in nature and that could be used to thwart the intent of the statute. The placement of subparagraph (a)(4), which speaks of *enforcement*, would be most appropriate after the subparagraphs that list prohibited security instrument *provisions* but before the subparagraphs that list prohibited lender *practices*. Thus, the placement of subparagraph (a)(4), when examined carefully, strengthens the court's interpretation of the statute.

Plaintiffs also cite the court to an unofficial opinion of the state Attorney General as supporting their view of the assumption statute. In response to a question concerning the effect of the assumption statute on mortgage contracts executed prior to the statute's effective date, the Attorney General opined:

> While it is clear that the Act applies to certain transactions arising out of loans and mortgages executed prior to the Act's effective date, the exact effect of the Act on such transactions will have to be resolved on a case by case basis. This is because enforcement of certain mortgage provisions is prohibited by Section 2(a)(4) of the Act only if the instrument was executed on or after July 1, 1979. This could be read to preserve otherwise prohibited provisions in instruments executed prior to July 1, 1979, but this would depend on the provisions and their relationship to practices specifically prohibited by the Act.

*Opinions of the Attorney General*, Unofficial Opinion U79–17 at 198 (1979).

The Attorney General himself states that there is no unqualified answer to the effect of the statute on pre-July 1, 1979, mortgages. His opinion is speculative and does not address any detailed arguments of statuto-ry construction. In addition, this court does not believe its interpretation to be in conflict with that of the Attorney General. In fact, the court's reading of the statute, that prohibited provisions in instruments executed before July 1, 1979, are preserved, is contemplated by the cited opinion. Therefore, the Attorney General's opinion, which is both unofficial and merely persuasive, does not alter this court's reading of the Georgia Assumption Statute.

Plaintiffs' final argument purports to be founded on logic and depends on a technical and an exactly literal reading of the statute. The court finds that argument to be ingenious but confused and simplistic. In effect, plaintiffs argue that subparagraph (a)(4) which preserves otherwise prohibited provisions in documents executed before July 1, 1979, does not even apply to this case because that subsection only applies to the *enforcement* and *attempted enforcement* of mortgage provisions that are *contrary* to the statute. Plaintiffs assert that the present case does not involve the enforcement or attempted enforcement of a provision that is contrary to the statute. This argument depends on an overly technical reading of the statute and fails because it elevates form over substance.

The transactions at issue here, although not technically enforcing prohibited due-on-sale clauses,[3] have the same effect in substance. The negotiating position of lenders presumes the ability to enforce a due-on-sale clause. In addition, loan assumptions are, as a matter of standard practice, contingent upon a lender's approval. A lender, of course, will not approve the assumption unless the buyer agrees to an increase in the rate of interest on the loan. The lender's bargaining position is strengthened because it need not accept the deal, and could, on sale, extinguish the existence of the loan by declaring the entire amount due. In such circumstances, it is never necessary to actually employ a due-on-sale clause. Either an agreement as to interest rate is

---

**3.** A "lender shall not, directly or indirectly . . . [a]ccelerate or mature the indebtedness secured by such real estate on account of the sale or transfer of such real estate or on account of the assumption of such indebtedness." Ga. Code Ann. § 67–3002(a)(1).

reached and assumption is not available. In both cases the reason is the lender's ability to exercise a due-on-sale clause.

■ If plaintiffs were correct in relying on their overly technical reading of the statute, subparagraph (a)(4) would be superfluous. The subsection would either be without application altogether, or would only be applicable in situations where a deal were not contingent on a lender agreeing to the assumption. This would be the only set of facts under which a buyer would contract to assume a mortgage debt, the sale would be completed, and the lender, having not agreed to the assumption, would declare the debt due immediately. This acceleration practice is already prohibited, however, by subparagraph (a)(1). The court will not construe subparagraph (a)(4) as being merely surplusage if it is not necessary to do so. *See United States v. Powers*, 307 U.S. 214, 57 S.Ct. 805, 83 L.Ed. 1245 (1939).

As stated in the court's Order of February 2, 1981, subparagraph (a)(4) is the provision that makes the Assumption Statute's prohibitions operative. By itself it has no meaning. Rather, it takes on meaning in the context of subparagraphs (a)(1) through (a)(3), (a)(5), and (a)(6). These are the subparagraphs that determine what provisions and practices are contrary to the statute and cannot be enforced pursuant to subparagraph (a)(4). In the plan of the General Assembly, these subparagraphs provide the substantive provisions of the act and subparagraph (a)(4) provides for the statute's operation. Contrary to plaintiffs' argument, subparagraph (a)(4) has no independent significance.

In fact, the court believes that its interpretation is the only construction of the statute that is reasonable. Were the statute not to be so construed, a peculiar and anomalous situation would exist. Under plaintiffs' construction of the statute, the act and its prohibitions would have become effective on March 1, 1979, the date the act was signed by the Governor, but lenders could continue to enforce due-on-sale claus-

es until July 1. Thus, a lender could execute a document on March 2, the day after the statute became effective, and insert in the instrument a due-on-sale clause, the enforcement of which was not prohibited by the act. However, the lender would actually be barred from accelerating the debt under subparagraph (a)(1).[4] This would create a senseless conflict, which the court does not believe the General Assembly intended. *Commissioner v. Hammel*, 311 U.S. 504, 510, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1941).

Finally, the preamble to subsection (a) states that the statute's prohibitions are "[s]ubject to the limitations and exceptions as provided in this Chapter." The court believes that one such limitation is that prohibited lending terms would not be barred from enforcement in documents executed prior to July 1, 1979. Plaintiffs' motion for reconsideration must, therefore, be DENIED.

## II. *Defendants' Motion For Entry of Judgment*

■ Also pending before the court is defendants' Motion for Entry of Final Judgment pursuant to Rule 54(b). In reviewing such a motion, "the district court should feel free to consider any factor that seems relevant to a particular action, keeping in mind the policies the rule attempts to promote." Wright & Miller, *Federal Practice and Procedure* : Civil § 2659 (footnote omitted). Among those factors is the relationship of the adjudicated claims to the unadjudicated claims remaining in the case. *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956). The court may also consider whether an entry of final judgment would complete a record sufficient for a meaningful appeal. Wright & Miller, *supra.*

■ In the present case, the court has decided all issues pertinent to plaintiffs' claims involving the Georgia Assumption Statute. Several causes of action remain in

4. *See* note 3 *supra.*

the case, including another state claim asserting violation of the state usury laws and a claim founded upon the federal antitrust statutes. When this court weighs the overall policy disfavoring piecemeal appeals against the exigencies of this case, *Gass v. National Container Corp.*, 271 F.2d 231 (7th Cir. 1959), a balance is struck in favor of denying defendants' motion. On the one hand, there is the "traditional, deeply-rooted and wisely sanctioned principle against piecemeal appeals," *id.* at 233, that weighs heavily in the court's analysis. At the same time, there is one other state claim, which the court has yet to decide, that is intimately involved with plaintiffs' assumption statute cause of action, which the court has already decided.

The exigencies of this case, which the court is required to consider, *id.*, are not great at the present time. Plaintiffs have filed a summary judgment motion on the state usury claims, and that motion is now pending before the court. Since that motion will be resolved in the near future, it would seem wiser, at a minimum, to delay appeal on the assumption statute issues until all state issues are resolved. Though resolution of the issues in this case is important to the state's financial community as well as the state's home-owners and prospective home-owners, it is doubtful that a meaningful appeal could be had without a hearing on the usury issues not yet resolved by this court. This is because the assumption statute is intimately associated with usury, *see* Ga.Code Ann. § 67–3002(g), and because plaintiffs have argued or may argue that the assumption statute should be construed as a usury statute. *Dantus v. First Federal Savings and Loan Association*, 502 F.Supp. 658 (D.Colo.1980); Brief in Opposition to Defendants' Joint Motion for Partial Summary Judgment at 4–9.

In addition, the court, without so deciding, has grave reservations that this case should ever be appealed on a piecemeal basis. In *Gass*, for example, the district court dismissed two of the three counts of plaintiff's complaint and entered a final judgment pursuant to Rule 54(b). The court of appeals dismissed the appeal and remanded the case as improper for the entry of a Rule 54(b) judgment. Given the rarity with which Rule 54(b) is to be used, this case may or may not ultimately prove appropriate for its exercise. *See, e. g., Kirtland v. J. Ray McDermott & Co.*, 568 F.2d 1166 (5th Cir. 1978); *United States v. Crow, Pope and Land Enterprises, Inc.*, 474 F.2d 200 (5th Cir. 1973). Defendants, however, may renew their motion at a later, more appropriate time.