**In re JONES TRUCK LINES, INC., Debtor.**

**JONES TRUCK LINES, INC., Debtor–In–Possession, Plaintiff,**

v.

**PHOENIX PRODUCTS COMPANY, INC., Defendant.**

No. 93–C–673.

United States District Court, E.D. Wisconsin.

July 21, 1994.

Paul R. Jaessing, Waukesha, WI, David G. Sperry, Independence, MO, for plaintiff.

William P. Dineen, Dineen Law Offices, Milwaukee, WI, George Carl Pezold, Augello, Pezond & Hirschmann, Huntington, NY, for defendant.

## *DECISION AND ORDER*

WARREN, District Judge.

Before the Court are the plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) and the defendant's Cross–Motion for Stay and Referral to the Interstate Commerce Commission ("ICC") in the above-captioned matter. For the following reasons, the defendant's motion is granted, and the plaintiff's motion will be held in abeyance pending ICC determination of the reasonableness of the tariff rate sought by Jones, its motor carrier status, and the applicable tariff rate; during such time, this case shall be closed for statistical purposes, and may be reopened by either party after ICC resolution of such issues.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Between July and December, 1988, plaintiff Jones Truck Lines, Inc. ("Jones") transported approximately forty-four (44) truck-load shipments of goods on behalf of defen-

dant Phoenix Products Company, Inc. ("Phoenix"). Shortly thereafter, Jones became insolvent; it currently exists as a debtor-in-possession in a Western District of Arkansas bankruptcy proceeding. On June 30, 1993, Jones filed the instant Complaint, seeking ex-post facto collection of $5,853.25 in freight charges plus interest allegedly owed by Phoenix based on tariffs filed by Jones with the ICC. Phoenix answered on July 22, 1993, denying Jones' charges and bringing eighteen (18) affirmative defenses [1] including, *inter alia*, the inapplicability of the filed rate doctrine [2] given Jones' status as a motor contract carrier and the unreasonableness of the claimed tariff rate. *See* Court's Order of October 29, 1993.

On February 24, 1994, Jones moved for summary judgment, arguing that, despite Phoenix' counterclaim that its tariffs were unreasonable, enforcement of its undercharge claim is warranted under *Reiter v. Cooper,* — U.S. —, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). According to Jones, referral of this action to the ICC is inappropriate because Phoenix has given inadequate evidence of tariff unreasonableness, the ICC policy on determining the reasonableness of negotiated rates is in a state of flux, and the Negotiated Rates Act of 1993 ("1993 Act") is inapplicable to this case. Phoenix' unreasonable-rate counterclaim may be protected, Jones argues, by requiring Phoenix to pay into the court the amount owed under Jones' filed rate while it litigates "rate reasonableness" with the ICC, or by entering judgment and staying enforcement. Jones further claims an entitlement to prejudgment interest accruing from the date of each shipment.

Phoenix responded on March 18, 1994, arguing that the plaintiff misrepresented the law in its brief and that summary judgment is inappropriate. Phoenix emphasizes that it is challenging the tariff rate sought by Jones

in this case based on Jones' status as a motor contract carrier as well as its unreasonableness; Phoenix argues that, if Jones acted as a motor contract carrier, rather than a motor common carrier, the Transportation Agreement entered into by the parties, rather than the filed rate doctrine, establishes the proper shipment charge. Phoenix also claims that *Reiter* instructs lower courts to ordinarily *not* grant judgment for carrier undercharges prior to adjudication of a shipper's counterclaim, and that Jones has shown no danger or hardship warranting equitable departure from this rule. The defendant also asserts that prejudgment interest is inappropriate in this case.

In addition, the defendant filed a Cross-Motion for Stay and Referral to the ICC, arguing that, pursuant to the 1993 Act, "the ICC has primary and exclusive jurisdiction over the threshold issue" of whether the shipments moved under contract, rather than common, carriage, thereby rendering the 'filed rate doctrine'" advanced by Jones inapplicable. Phoenix further asserts that the 1993 Act gives the ICC "sole and primary jurisdiction to determine whether the attempt to collect the tariff rate is an 'unreasonable practice.'" Phoenix also argues that the need for uniformity in interpreting relevant statutory and regulatory provisions requires ICC expertise. Finally, Phoenix argues that, under the majority view, the reasonableness of the tariff rate advanced by Jones must be decided by the ICC.

On April 25, 1994, the plaintiff responded to Phoenix' Cross-Motion for Stay and Referral to the ICC and replied to Phoenix' Memorandum in Opposition to Summary Judgment, arguing that the 1993 Act is inapplicable in this case given 11 U.S.C. § 541(c)(1), which provides that "an interest of the debtor in property becomes property

---

**1.** Henceforth, the defendant's affirmative defenses will be treated by the Court as counterclaims brought under Federal Rule of Civil Procedure 13. *Reiter v. Cooper,* — U.S. —, —, 113 S.Ct. 1213, 1217, 122 L.Ed.2d 604 (1993) (finding that, where defendant in filed rate doctrine case mistakingly designated its counterclaims based on the unreasonableness of the claimed tariff rate as defenses, Federal Rule of Civil Procedure 8(c) required the court to "treat the

pleading as if there had been a proper designation").

**2.** "The filed rate doctrine embodies the principle that a shipper cannot avoid payment of the tariff rate by invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate." *Reiter,* — U.S. at —, 113 S.Ct. at 1219.

of the [debtor's estate] ... notwithstanding any provision in ... applicable nonbankruptcy law." According to Jones, referral of this matter to the ICC under the provisions of the 1993 Act would cause an impermissible forfeiture of its property, namely, the right to recover a freight undercharge claim. Jones also claims that, even if the 1993 Act is applicable in this case, relevant provisions have not been given retroactive effect. Jones further asserts that Phoenix has not met its burden of showing, beyond mere allegation, that the tariff rates filed were, in fact, unreasonable, and emphasizes the ICC's apparent inability to render timely decisions. Jones also claims that it operated as a motor common, rather than motor contract, carrier. Finally, Jones again suggests that the Court enter judgment on its claim and stay enforcement, allowing discovery on the issue of Phoenix' financial solvency.

Phoenix replied on May 5, 1994, listing a number of cases where courts have applied the 1993 Act despite the fact that the carrier was in bankruptcy.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that:

> "[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

See Reiter, —— U.S. at ——, 113 S.Ct. at 1218; Sears, Roebuck & Co. v. Mackey, 351

U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956); Cold Metal Process Co. v. United Eng'g & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956). A district court's power to separate judgments under Rule 54(b) is "largely discretionary," and should be exercised in light of "judicial administrative interests as well as the equities involved," giving due weight to the "historical federal policy against piecemeal appeals." Reiter, —— U.S. at ——, 113 S.Ct. at 1218; Curtiss–Wright Corp. v. General Elec. Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980); Sears, 351 U.S. at 438, 76 S.Ct. at 901. "Nothing in the [Interstate Commerce Act] provides that, in an action by a carrier to collect undercharges, a § 11705(b)(3) counterclaim is not subject to the normally applicable provisions of the Federal Rules," including Rule 54(b). Reiter, —— U.S. ——, 113 S.Ct. at 1219. Thus,

> "[i]n the ordinary case, where a carrier is solvent and has promptly initiated suit, the equities favor separate judgment on the principal claim: referral of the unreasonable-rate issue could produce substantial delay, and tariff rates not disapproved by the ICC are legal rates, binding on both the shipper and the carrier. The equities change, however, when the suing carrier is in bankruptcy. Indeed, we have previously held that even a 'threat of insolvency' of the party seeking separate judgment is a factor weighing against it. Even so, we cannot say that insolvency is an absolute bar. Conceivably, a district court could determine that other equities favor separate judgment—for example, a threat that the shipper may become insolvent, which Rule 62(h) would allow a court to protect against by entering separate judgment for the carrier but staying enforcement on condition that the shipper deposit the amount of the judgment with the court."

Id. at ——, 113 S.Ct. at 1221 (citations omitted).

## III. DISCUSSION

 As previously indicated, the parties contest whether (1) Jones was operating as a motor contract or motor common carrier, (2) the tariff rate charged by Jones, if it acted as

a motor common carrier, was reasonable, and (3) it is an "unreasonable practice" for Jones to seek undercharges despite the parties' negotiated rate under the Transportation Agreements. Regarding the first point, the filed rate doctrine is clearly inapplicable in this matter if, as Phoenix claims, Jones acted as a motor contract, rather than a motor common, carrier. *See, e.g., Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 133, 110 S.Ct. 2759, 2769, 111 L.Ed.2d 94 (1990); *Atlantis Express, Inc. v. Standard Transp. Serv., Inc.,* 955 F.2d 529, 533 (8th Cir.1992); *Exemption of Motor Contract Carriers from Tariff Filing Requirements,* 133 M.C.C. 150 (1983), *aff'd. sub. nom. Central & Southern Motor Freight Tariff Ass'n, Inc. v. United States,* 757 F.2d 301 (D.C.Cir. 1985), *cert. denied* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). As to the second issue, it is recognized that "[t]he filed rate [doctrine] is not enforceable if the ICC finds the rate to be unreasonable." *Maislin,* 497 U.S. at 128, 110 S.Ct. at 2767 (holding that the ICC cannot disregard the filed rate doctrine by concluding that the carrier engaged in an *"unreasonable practice"*). *See also Reiter,* —— U.S. at ——–——, ——, 113 S.Ct. at 1216–17, 1219 (finding that the filed rate doctrine "does *not* preclude avoidance of the tariff rate [ ] through claims and defenses that are specifically accorded by the ICA itself," including the "reparations rights explicitly conferred [on shippers] by [49 U.S.C.] § 11705(b)(3)"). If Jones' claimed tariff rate is found to be unreasonable, it is more likely that it acted as a motor contract, rather than motor common, carrier. A determination as to the reasonableness of the tariff rate sought by Jones, then, serves two purposes; it helps to establish or deny Phoenix' right to reparations in its counterclaim, and provides evidence of Jones' carrier status. As a result, it is sensible to address the reasonableness of Jones' claimed tariff rate before determining the applicable shipping rate or carrier status in this case.

■ The Supreme Court recognizes that the question of the reasonableness of tariff rates is a matter entrusted by Congress to the ICC. *See, e.g., Maislin,* 497 U.S. at 128–29, 110 S.Ct. at 2767; *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 68, 77 S.Ct.

161, 167, 1 L.Ed.2d 126 (1956). Thus, once the parties in a case identify purported tariff rates, the ICC has primary jurisdiction regarding the enforceability of such rates as "reasonable." As noted in *Reiter:*

"the doctrine of primary jurisdiction ... is [ ] specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling. Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice ...

Shortly after enactment of the provision now codified at § 11705(b)(3), the ICC said that the law did not 'grant the Commission any initial jurisdiction ... with respect to the award of reparations'; rather, 'shippers' recourse *must* be to the courts,' which would 'refer' the issue of rate reasonableness to the Commission. We find that to be a reasonable interpretation of the statute, and hence a binding one."

*Id.* at —— U.S. at ——–——, 113 S.Ct. at 1220–21 (citations and footnotes omitted).

■ Referral of unreasonable-rate claims to the ICC, in turn:

"... is sometimes loosely described as a process whereby a court refers an issue to an agency. *See, e.g.,* 28 U.S.C. § 1336. But the [Interstate Commerce Act] (like most statutes) contains no mechanism whereby a court can on its own authority demand or request a determination from the agency; that is left to the adversary system, the court merely staying its proceedings while the shipper files an administrative complaint under § 11701(b). *See* § 11705(c)(1) (second sentence). Use of the term 'referral' to describe this process seems to have originated in *Western Pacific,* which asserted that, where issues within the special competence of an agency arise, 'the judicial process is suspended

pending referral of such issues to the administrative body for its views.' *United States v. Western Pacific R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)."

*Id.* at ——, n. 3, 113 S.Ct. at 1220, n. 3. Phoenix has properly initiated the referral process in this case. As previously indicated, the Supreme Court in *Reiter* noted that the issuance of a separate judgment under Rule 54(d) is disfavored when a suing carrier is bankrupt; this, in turn, strengthens the argument for referral of the shipper's unreasonable-rate claim to the ICC. *Id.* at ——, 113 S.Ct. at 1221. Jones has advanced no compelling reasons for this Court to abrogate the ICC's primary jurisdiction over such issue; its claim that ICC jurisprudence on this issue is "ever changing," and that ICC litigation is prohibitively time-consuming, are not persuasive. The Court has full confidence in the ICC's ability to address this matter expeditiously, and to use its expertise regarding tariff rates to reach a just and fair decision. Moreover, as previously indicated, Jones' bankrupt status makes referral to the ICC preferable, and there is no indication that Phoenix may become insolvent. As a result, we refer to the ICC for resolution the question of the reasonableness of Jones' claimed tariff rate.

■ Relevant provisions of the 1993 Act, in turn, reaffirm the Court's authority to refer unreasonable-rate claims to the ICC. The 1993 Act allows shippers to settle tariff disputes by paying a specified percentage of claimed undercharges "when a claim is made by a motor carrier of property providing transportation subject to the jurisdiction of the Commission ... or by a party representing such a carrier ... regarding the collection of rates or charges for such transportation in addition to those originally billed and collected by the carrier [if] the carrier ... is no longer transporting property," 49 U.S.C. § 10701(f)(1 through 4); Jones clearly fits this definition. Subsections (5) and (6), however, state the following:

"(5) Effects of election. When a person from whom additional legally applicable freight rates or charges are sought does not elect to use the provisions of paragraph (2), (3), or (4), the person may pursue all rights and remedies existing under this title.

(6) Stay of additional compensation. When a person proceeds under this section to challenge the reasonableness of the legally applicable freight rate or charges being claimed by a carrier or freight forwarder described in paragraph (1) in addition to those already billed and collected, the person shall not have to pay any additional compensation to the carrier or freight forwarder *until the Commission has made a determination as to the reasonableness of the challenged rate* as applied to the freight of the person against whom the claim is made."

(Emphasis added). By specifying Commission, rather than Court, review, subsection (6) precludes the Court, once referral is requested, from seeking enforcement of a separate judgment under Rule 54(b) until the ICC determines the reasonableness of the tariff rate claimed by Jones. Again, referral to the ICC is therefore appropriate.

■ The above-cited provisions of the 1993 Act apply in this case. As acknowledged by Jones, retroactive application is not a concern, as the 1993 Act makes clear that these provisions apply to all unreasonable-rate claims pending as of December 3, 1993, its effective date. Pub.L No. 103–180, 107 Stat. 2047, § 2 (1993). Nor does application of these provisions limit the effect of the bankruptcy laws. The 1993 Act indicates that nothing in it should be "construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy," Pub.L. No. 103–180, 107 Stat. 2053, § 9 (1993); 11 U.S.C. § 541(c)(1), in turn, states that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in ... applicable nonbankruptcy law ... that effects or gives an option to affect a forfeiture, modification, or termination of the debtor's interest in property." Jones argues that the provisions in the 1993 Act allowing a shipper to settle a tariff dispute by paying a stated percentage of the undercharge claim violates these statutory limitations by allowing Phoenix to determine Jones' property interest. In this case,

however, Phoenix has not elected to utilize this settlement procedure; rather, it has advanced an unreasonable-rate claim pursuant to *Reiter* and § 10701(f)(6). As a result, the Court need not determine whether the settlement procedure of § 10701(f)(2 through 4) violates any statutory norms. Even assuming that such procedure is invalid, however, it is apparent that subsection (6), as a codification of pre–1993 Act practice, would remain effective. Thus, the Court reaffirms its decision to stay these proceedings pending ICC determination of the reasonableness of the tariff rate advanced by Jones.

■ The 1993 Act also grants explicit authority to the Court to refer disputes regarding motor carrier status to the ICC; it amended 49 U.S.C. § 11101 to read, in relevant part, as follows:

> "**(d) Resolution of disputes relating to contract or common carrier capacities.** If a motor carrier ... has authority to provide transportation as both a motor common carrier and a motor contract carrier and a dispute arises as to whether certain transportation is provided in its common carrier or contract carrier capacity and the parties are not able to resolve the dispute consensually, *the Commission shall have jurisdiction to, and shall, resolve the dispute.*"

*See* Pub.L. No. 103–180, 107 Stat. 2052, § 8 (1993). Again, this language makes clear the ICC's primary jurisdiction to resolve such disputes, and, once Phoenix requested referral, precludes the Court from entering a separate judgment for Jones until the ICC settles the parties' dispute regarding Jones' motor carrier status. While acting as an affirmative grant of authority to the ICC, this provision does little to change pre–1993 referral practice; at best, it represents a procedural change, rather than a substantive addition, to the Interstate Commerce Act. As a procedural rule, this provision does not operate "retroactively," as it does not establish "new legal consequences to events completed before its enactment." *Landgraf v. USI Film Products,* —— U.S. ——, —— –——, 114 S.Ct. 1483, 1499–1502, 128 L.Ed.2d 229 (1994) (noting that "statutes conferring or ousting jurisdiction [or] changing proce-

dural rules" do not act retroactively). *See also Mojica v. Gannett Co., Inc.,* 7 F.3d 552, 559 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994) ("a statute may include certain procedural or damage provisions which do not impact substantive rights, and therefore should apply to" cases pending at the time of enactment); *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929, 939 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992) ("it is arguable that courts should apply the [Title VII] procedural and damage provisions in effect at the time of the trial"); *Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 228 (7th Cir.1992) ("[p]rocedural innovations not likely to bias a decision systematically in favor of one litigant rather than his opponent can, without serious affront to the values crystallized in the phrase 'rule of law,' be applied to cases pending when the innovations were adopted"). Nor are the above-referenced statutory limitations on rules affecting bankruptcy property violated in any way. As a result, this provision of the 1993 Act is applicable to this case, and referral to the ICC for resolution of the parties' dispute regarding Jones' motor carrier status is again required.

■ We are precluded, however, from referring to the ICC the third contested issue between the parties; namely, whether it is an "unreasonable practice" for Jones to seek undercharges despite the negotiated rates given in the Transportation Agreements. In *Maislin,* the Supreme Court held that the ICC had no authority to depart from the filed tariff doctrine based on its determination that a carrier engaged in an "unreasonable practice" by attempting to collect the filed rate after the parties had negotiated a lower charge. *Maislin,* 497 U.S. at 129–136, 110 S.Ct. at 2767–71. The 1993 Act amended this rule as follows:

> "**(e) Alternative procedure for resolving disputes.—**
>
> (1) General Rule.—For purposes of section 10701 of title 49, United States Code, *it shall be an unreasonable practice for a motor carrier of property ... to attempt to charge or to charge for a transportation service provided before September 30, 1990,*

*the difference between the applicable rate that is lawfully in effect pursuant to a tariff* that is filed in accordance with chapter 107 of such title by the carrier or freight forwarder applicable to such transportation service *and the negotiated rate* for such transportation service if the carrier or freight forwarder is no longer transporting property ..."

(2) Jurisdiction of Commission.—The Commission shall have jurisdiction to make a determination of whether or not attempting to charge or the charging of a rate by a motor carrier or freight forwarder or party representing a motor carrier or freight forwarder is an unreasonable practice under paragraph (1). If the Commission determines that attempting to charge or the charging of the rate is an unreasonable practice under paragraph (1), the carrier, freight forwarder, or party may not collect the difference described in paragraph (1) between the applicable rate and the negotiated rate for the transportation service ...

(3) Stay of additional compensation.— When a person proceeds under this subsection to challenge the reasonableness of the practice of a motor carrier, freight forwarder, or party described in paragraph (1) to attempt to charge or to charge the difference described in paragraph (1) between the applicable rate and the negotiated rate for the transportation service in addition to those charges already billed and collected for the transportation service, *the person shall not have to pay any additional compensation to the carrier, freight forwarder, or party until the Commission has made a determination as to the reasonableness of the practice ...*"

Pub.L. No. 103–180, 107 Stat. 2047–48, § 2 (1993) (emphasis added).

■ This provision, then, overrules *Maislin* as to claimed undercharges resulting from transportation provided before September 30, 1990; its application to this case, however, would appear to violate the retroactivity principles discussed in *Landgraf.* In *Landgraf,* the Supreme Court acknowledged two types of retroactivity problems; the application of newly-enacted statutory norms to pending cases, and the application of newly-

enacted statutory norms to prior conduct. *Landgraf,* —— U.S. at ——, ——, and ——, 114 S.Ct. at 1493, 1497, and 1499. The above-cited provision, by its express terms, eliminates the latter retroactivity concern, as Congress has made it applicable to conduct occurring prior to September 30, 1990. The former retroactivity problem, however, remains, as nothing in the provision indicates whether it is to apply to cases pending as of the effective date of the 1993 Act. As previously indicated, subsection (c) of the 1993 Act makes § 10701(f) of the Interstate Commerce Act, as provided in subsections (a) and (b) of the 1993 Act, applicable "to all claims pending as of the date of the enactment of this Act." Pub.L. No. 103–180, 107 Stat. 2047, § 2 (1993). As noted by the defendant, however, no similar applicability provision exists with respect to subsection (e) of the 1993 Act. Evidently, Congress knows how to draft such a provision when desired; its failure to do so as part of the "unreasonable practices" amendment in the 1993 Act strongly suggests that such amendment was not intended to apply retroactively to cases already pending before trial courts and, at any rate, fails to rebut the "deeply rooted" presumption against retroactive legislation recognized by the Supreme Court. *Landgraf,* at —— – ——, 114 S.Ct. at 1497–98.

Admittedly, there seems little reason for Congress to distinguish between pending and non-pending undercharge claims stemming from pre-October of 1990 transportation services, granting the right to bring an "unreasonable practice" counterclaim only in the latter circumstance. However, the Supreme Court has endorsed the following procedure for retroactivity analysis:

"When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a par-

ty's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result."

*Landgraf,* at ——, 114 S.Ct. at 1505. "Clear congressional intent" that subsection (e) of the 1993 Act is to apply retroactively to cases filed prior to its effective date is lacking; as a result, because such subsection substantively changes Jones' potential liability for reparations, it is inapplicable to the instant case. Therefore, the Court will not ask the ICC to determine the reasonableness of Jones' attempt to enforce the filed rate doctrine despite its negotiated rate agreement with Phoenix.

 Finally, if the ICC determines that Jones acted as a motor common carrier but that its claimed tariff rate is unreasonable, the Court also refers to the ICC the issue of the applicable alternative tariff rate. Because tariff construction and interpretation "is akin to the task of statut[ory] interpretations ... involv[ing] mainly questions of law," it is ordinarily assigned to the courts. *Coca–Cola Co. v. Atchison, Topeka and Santa Fe Ry. Co.,* 608 F.2d 213, 219 (5th Cir. 1979). *See also Great N. Ry. Co. v. Merchants Elevator Co.,* 259 U.S. 285, 290–91, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922). However, when "ancillary factual determinations," such as the reasonableness or technical meaning of certain provisions, must be made in interpreting a particular tariff, the ICC must make such findings before the Court passes on tariff interpretation. *Western Pacific,* 352 U.S. at 66–69, 77 S.Ct. at 166–68; *Coca–Cola,* 608 F.2d at 213. Thus, where "questions of construction and reasonableness are so intertwined that the same factors are determinative on both issues, then it is the Commission which must first pass on them." *Western Pacific,* 352 U.S. at 69, 77 S.Ct. at 168.

In this case, questions as to the reasonableness of purported tariff rates and the technical provisions of such tariffs require the administrative expertise of the ICC before this Court can ultimately address tariff interpretation. According to the Supreme Court,

> "[t]his conclusion is fortified by the artificiality of the distinction between the issues of tariff construction and of the reasonableness of the tariff as applied, the latter being recognized by all to be one for the Interstate Commerce Commission ... [T]he mere fact that the issue is phrased in one instance as a matter of tariff construction and in the other as a matter of reasonableness should not be determinative on the jurisdictional issue. To hold otherwise would make the doctrine of primary jurisdiction an abstraction to be called into operation at the whim of the pleader."

*Western Pacific,* 352 U.S. at 68–69, 77 S.Ct. at 167. Important technical issues in this case, including the procedures invoked by shippers to "trigger" filed rates, the range of available discounts under relevant tariffs, the interpretation of tariff provisions containing technical language or other terms of art, and the tariff typically charged in such circumstances, should be resolved by the ICC prior to tariff interpretation by this Court. While referral of such matters to the ICC for construction is not necessary "if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it," *Id.* at 69, 77 S.Ct. at 168, the Court has not been made aware of any such rulings in this case. As a result, because these issues are inextricably intertwined with the overriding question of applicability of the tariff rate advanced by Jones, they must be resolved by the ICC prior to any ruling by this Court.

## IV. SUMMARY

For the foregoing reasons, the Court hereby **GRANTS** the defendant's Motion for Stay and Referral to the ICC, and further court proceedings in the above-captioned matter, including the plaintiff's Motion for Summary Judgment, will be **STAYED** pending ICC determination of the reasonableness of the tariff rate sought by Jones, its motor carrier status, and the applicable tariff rate; during such time, this case shall be closed for statistical purposes, and may be reopened by ei-

ther party after ICC resolution of such issues.

**SO ORDERED.**